# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PAMMY J. MOORE,**

    **Plaintiff,**

                                Civil Action 2:18-cv-634
                                Chief Judge Edmund A. Sargus, Jr.
    v.                            Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Pammy J. Moore ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Response in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 8). For the reasons that follow, the undersigned **RECOMMENDEDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I.    BACKGROUND

Plaintiff protectively filed her applications for a period of disability and disability insurance benefits and supplemental security income on June 25, 2014. Plaintiff alleged a

disability onset date of June 3, 2014. Plaintiff's application was denied initially on October 2, 2014, and upon reconsideration on July 1, 2015. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Timothy Gates (the "ALJ") held a hearing on March 2, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Carl W. Hartung (the "VE") also testified at the hearing. On August 18, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On April 30, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors (ECF No. 11), Plaintiff raises several contentions of error. Plaintiff first contends that the ALJ's decision is not supported by substantial evidence because it does not adequately consider or accommodate her diarrhea and neuropathy. (*Id.* at 5-9.) Relatedly, Plaintiff asserts that the ALJ erred in not finding her neuropathy as a severe impairment. (*Id.* at 14-16.) Plaintiff also contends that the ALJ erred in evaluating the opinions of her treating physicians, Drs. Prasad Kudalkar and Robert Rupert, and treating nurse practitioner, Joel Rice. (*Id.* at 9-14.)

## II. RELEVANT MEDICAL EVIDENCE

### A. Overview of Relevant Medical Evidence[1]

On April 29, 2014, Plaintiff presented to Fayette County Memorial Hospital with episodes of diarrhea occurring 10 to 15 times per day. (R. at 434.) Testing revealed that

---

[1] In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

Plaintiff had a colonic obstruction secondary to a sigmoid carcinoma, and she was diagnosed with adenocarcinoma of the colon. (R. at 382, 389.) On June 5, 2014, Plaintiff had emergency surgery consisting of a decompressive loop transverse colostomy and insertion of a right subclavian triple lumen catheter. (R. at 352, 382.) From August 2014 through May 2015, Plaintiff was treated with chemotherapy and radiation. (R. at 807-16, 747.) Plaintiff's cancer has been in remission since she completed radiation in May 2015. (R. at 853.)

Plaintiff's medical records reveal numerous complaints of diarrhea after completion of radiation. (R. at 665, 685, 695, 699, 702, 704, 705, 730, 735, 737-40, 747, 807, 818, 871, 884.) Various doctors noted that Plaintiff's diarrhea was ongoing and had been occurring since her colon surgery. (R. at 704-05, 818, 737, 871.) In early 2017, treating oncologist, Prasad Kudalkar, M.D., noted that Plaintiff has had loose stools "since her surgery 2 years ago," and that her diarrhea "is thought to be related to her colon surgery." (R. at 871, 884.) The record indicates that Plaintiff used both over-the-counter and prescription medications for her bowel issues, and that she was prescribed Depends disposable underwear. (R. at 848, 735, 740, 878, 818.) On some occasions during this time period, Plaintiff's treatment records state that diarrhea was not present and/or that she was constipated. (*See e.g.* R. at 628, 681, 688, 772, 853, 858.)

The medical records also contain evidence that Plaintiff suffered from chemotherapy-induced neuropathy. Plaintiff was noted to have "mild neuropathy," "ongoing grade 1 to 2 peripheral neuropathy," "neuropathy," and "chemotherapy-induced peripheral neuropathy" throughout her treatment records. (R. at 626, 730, 811, 813, 884.) On December 28, 2015, Plaintiff's oncologist, Jeffrey VanDeusen, M.D., noted that Plaintiff "continues to suffer from

3

chemotherapy-induced peripheral neuropathy from her oxaliplatin. She has been placed on Lyrica and venlafaxine without much benefit." (R. at 730.)

**B.    Medical Opinion Evidence**

On September 30, 2014, state-agency physician Eli Perencevich, D.O., opined that Plaintiff could perform light work with postural and environmental limitations. (R. at 68-70.) He found that Plaintiff was limited to occasionally climbing ladders/ropes/scaffolds, and frequently climbing ramps/stairs, stooping, kneeling, crouching, and crawling. (R. at 68-69.) He found that Plaintiff had no manipulative limitations. He opined that Plaintiff should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, etc., and avoid even moderate exposure to hazards (machinery, heights, etc.). (*Id.* at 69.) On reconsideration, on April 14, 2015, state-agency physician Esberdado Villanueva, M.D., adopted Dr. Perencevich's opinions, but added additional postural and environmental limitations. (R. at 96-98.) Dr. Villanueva limited Plaintiff to only occasional stooping, kneeling, crouching, and crawling. (R. at 97.) He also found Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibrations; avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and avoid all exposure to hazards (machinery, heights, etc.). (R. at 98.)

On November 10, 2014, while Plaintiff was receiving chemotherapy and prior to undergoing radiation, Plaintiff's treating Nurse Practitioner Joel Rice submitted an RFC questionnaire on her behalf. (R. at 521.) He opined that Plaintiff was incapable of performing even "low stress" jobs. (R. at 518.) He further opined that Plaintiff could walk a half of a block; sit for 2 hours at one time; stand for 20 minutes at one time; and sit and stand for less than

4

2 hours total in an 8-hour work day.  (R. at 519.)  He opined that Plaintiff must walk for 15 minutes every 15 minutes; shift positions at will; take unscheduled breaks every hour for about 20 minutes; and elevate her legs at 180 degrees all day.  (R. at 519-20.)  He further found that Plaintiff can never lift or carry any amount of weight, and can never stoop, crouch, or climb ladders or stairs.  (R. at 520.)  He opined that Plaintiff would miss work more than 4 days per month.  (R. at 521.)

On November 14, 2014, Plaintiff's oncologist, Dr. Robert Rupert, submitted a medical opinion.  (R. at 621-22.)  He opined that Plaintiff could not work.  (R. at 622.)  He further found that she could stand and sit for 30 minutes at one time and could not lift any weight on an occasional or frequent basis.  (R. at 622.)

On March 9, 2017, Plaintiff's oncologist, Prasad R. Kudalkar, M.D., submitted a medical opinion.  (R. at 884-890.)  Dr. Kudalkar opined that Plaintiff could occasionally lift/and or carry less than 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk less than 2 hours in an 8-hour workday; and sit less than about 6 hours in an 8-hour workday.  (R. at 884.)  He further opined that Plaintiff's ability to push and/or pull is limited in her upper and lower extremities.  (*Id*.)  When asked to explain the evidence that supports these conclusions, Dr. Kudalkar stated that:

> [Plaintiff] has history of colon ca and had received chemo therapy in 2014.  She has residual peripheral neuropathy due to chemotherapy which limits her activities.  She also has diarrhea 4-5 episodes / day [and] occasional incontinence which is thought to be related to her colon surgery.  She has COPD and using nebulizer [and] inhalers.

(R. at 884.)  Dr. Kudalkar also opined that Plaintiff could occasionally climb ramps and/or stairs, but never ladders, ropes, and/or scaffolds, and that she could never balance, stoop, kneel,

5

crouch, or crawl. (R. at 885.) He further concluded that Plaintiff was limited in reaching, handling (gross manipulation), and fingering (fine manipulation). (R. at 886.) He explained that Plaintiff's "COPD makes gross manipulations difficult," and that "peripheral neuropathy limits fine manipulation, feeling." (R. at 886.) Finally, Dr. Kudalkar found that Plaintiff is required to avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, etc., as well as hazards (machinery heights, etc.), due to her COPD and peripheral neuropathy. (R. at 887.)

### III. HEARING TESTIMONY

At the hearing, Plaintiff testified that she lives in an apartment with her husband and three children. (R. at 39.) She stated that her daughter helps her "a lot" with cooking and cleaning. (R. at 40.) Plaintiff testified that she leaves the house "[p]robably at least once a day." (R. at 54.)

Plaintiff testified that her colon cancer has been in remission since late 2015, but she still sees her doctor "all the time" for follow-up. (R. at 41-42.) She testified that she has "diarrhea consistently, and . . . can't seem to hold [her] bowels." (R. at 42.) She stated that her doctors have her "on the underwear now," and that she will "probably have to live with it for the rest of [her] life." (*Id.*) Plaintiff testified that even after radiation treatment, she did not feel that she could return to work, explaining:

> No, I was having problems with my bowels, but I don't even know when the diarrhea is going to hit. Sometimes I have it every day. Sometimes I have it every two days, and I just don't know when it's going to hit. And, I've had to leave the grocery cart in the store full before, because I had to leave to and go home, and change my clothes.

(R. at 46.)

Plaintiff further testified that her COPD limits her ability to stand and walk. (R. at 47.) She also stated that she has neuropathy, explaining that her "hands are still numb from the chemotherapy, and the bottom of [her] feet [are] numb from the chemotherapy." (*Id.*) When asked how the numbness in her hands affects her, Plaintiff testified as follows: "Well, I can start carrying a cup of coffee, and all of a sudden my hand will go numb, and I'll drop the cup of coffee. I can't really hold on to anything for a long, long amount of time." (R. at 47-48.) She stated that Nurse Practitioner Joel Rice and Dr. Kudalkar told her that she will likely have neuropathy for the rest of her life. (R. at 48-49.) When asked what her biggest problem was, Plaintiff testified, "diarrhea, and the numbness, and pain." (R. at 54.)

The VE also testified at the hearing. When asked "when does being off task become work preclusive," the VE responded that "a good benchmark is 10 percent, or greater . . ." (R. at 59-60.)

## IV. THE ADMINISTRATIVE DECISION

On August 18, 2017, the ALJ issued his decision. (R. at 15-26.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial

---

[2.] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

gainful activity since June 3, 2014, the alleged onset date. (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the severe impairments of sigmoid carcinoma with secondary colonic obstruction; stage 2 colonic adenocarcinoma; chronic obstructive pulmonary disease ("COPD"); major depressive disorder; and mild alcohol use disorder. (*Id.* at 17-18.) The ALJ further found that Plaintiff's headaches, neuropathy, and hypertension were non-severe, "as they cause only minimal or less than minimal limitation in the claimant's ability to perform basic work activities." (*Id.* at 18.) The ALJ did not discuss whether Plaintiff's diarrhea constitutes a severe impairment. (R. at 17-18.)

At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18-19.) At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ladders, ropes or scaffolds but can frequently climb ramps and stairs; and frequently stoop, kneel, crouch, and crawl but no balancing on beams. The claimant must avoid workplace hazards, including unprotected heights and moving mechanical parts. The claimant can have occasional exposure to humidity; pulmonary irritants, including dust, odors, and fumes; extreme cold; extreme heat; and vibration. The claimant is limited to a static work environment in which change is infrequent. The claimant requires work with no strict production demands or time

---

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

8

constraints.

(R. at 19.) In assessing Plaintiff's physical RFC, the ALJ assigned "significant" weight to the state-agency reviewing physician's opinion that Plaintiff could perform light work with postural and environmental limitations. (R. at 23.) He assigned "little weight" to the opinions of treating nurse practitioner Joel Rice, and "little" weight to the opinions of treating physicians Drs. Rupert and Kudalkar. (R. at 23-24.) The ALJ also considered Plaintiff's testimony concerning her alleged symptoms and found that her statements "concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 22.)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

9

1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

For her first contention of error, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because it does not adequately consider or accommodate her diarrhea and neuropathy. (Pl.'s Statement of Errors at 5, ECF No. 11.) Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because the ALJ "completely disregarded [Plaintiff's] frequent diarrhea and bathroom breaks," and instead concluded that "the record notes little to no complaints related to diarrhea." (Pl.'s Statement of Errors at 6, ECF No. 11.) Plaintiff further asserts that her need to use the restroom frequently due to diarrhea is amply

10

supported by the record, and that the ALJ was therefore required to make a finding regarding whether she needed additional or unscheduled bathroom breaks. (*Id.* at 8.) The Commissioner counters that the ALJ reasonably omitted limitations regarding additional restroom breaks because no medical source indicated that Plaintiff needed additional restroom breaks. (Def.'s Mem. in Opp. at 7, ECF No. 16.) The Commissioner also asserts that several medical records stated that diarrhea was "not present" and/or that Plaintiff was constipated. (*Id.*)

Plaintiff next contends that the ALJ erred in considering her neuropathy, as he improperly stated that it improved with medication. (Pl.'s Statement of Errors at 14, ECF No. 11.) She further argues that the medical records support a finding that her neuropathy was severe. (*Id.* at 15-16.) Although the Commissioner acknowledges that the ALJ erred in finding that Plaintiff's neuropathy improved with medication, he contends that the ALJ's findings are nonetheless supported by substantial evidence because her neuropathy was continually noted to be mild. (Def.'s Mem. in Opp. at 8-9, ECF No. 16.)

For the reasons that follow, the undersigned finds that the ALJ committed a number of errors in his consideration of the evidence related to Plaintiff's diarrhea and neuropathy such that the Court cannot conclude that substantial evidence supports his RFC formulation and nondisability finding. Accordingly, remand is required.[3]

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

---

[3] This finding obviates the need to analyze and resolve Plaintiff's remaining contentions of error.

Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted). An ALJ, however, "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, the ALJ discounted Plaintiff's allegations regarding her diarrhea and neuropathy, finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, [the Plaintiff's] statements concerning the intensity, persistence and

12

limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (R. at 22.) The ALJ explained his decision as follows:

> As for course of treatment, the claimant testified that she has numbness in her hands and feet from the neuropathy (Hearing Testimony). The record shows that the claimant suffered only from mild neuropathy, which improved with medication (Exhibits 14F/5-11, 15F/53, 57-59).
>
>      \*  \*  \*
>
> The record shows as well that the claimant had no real complaints related to her legs other than some neuropathy, which was found to be mild (Exhibits 14F/5-11, 15F/53, 57-59). The claimant then stated that she suffers from diarrhea and comes close to having accidents (Hearing Testimony). The record notes little to no complaints related to diarrhea. The claimant just indicated in November 2015, December 2015, and February 2017 that she had some diarrhea (Exhibits 14F/5-12, 18). The claimant otherwise had no complaints and had even complained of constipation on occasion (Exhibits 1F/16-20, 31, 8F/8-11, 10F/4-7, 14F/5-11).

(R. at 23.)

The undersigned finds that the ALJ committed a number of errors in his consideration of Plaintiff's diarrhea[4] and neuropathy such that the Court cannot conclude that substantial evidence supports his RFC formulation and nondisability finding. More specifically, the ALJ misstated some important evidence, misunderstood the importance of certain evidence, and improperly failed to consider other evidence.

First, the ALJ erroneously concluded that the record "notes little to no complaints related to diarrhea," and that other than in November 2015, December 2015, and February 2017, Plaintiff had no complaints of diarrhea. (R. at 23.) This finding is belied by the treating records, which are replete with notations regarding diarrhea. For example, on June 5, 2014, Dr.

---

[4] The undersigned notes that the ALJ did not analyze whether Plaintiff's diarrhea was a severe impairment at step two. Instead, the ALJ appears to consider Plaintiff's diarrhea as a symptom of her colon cancer.

13

William Stevenson noted that Plaintiff had a "history of two months of loose stools moving her bowels approximately 10 to 15 times per day." (R. at 804.) On October 15, 2014, Plaintiff's oncologist, Dr. Robert Rupert, noted that Plaintiff had mild diarrhea. (R. at 813.) On April 14, 2015, Plaintiff reported diarrhea and rectal urgency to her radiation oncologist, Dr. William Wilson. (R. at 753.) Plaintiff continued to complain of diarrhea after she completed radiation. On June 3, 2015, Dr. Wilson noted that Plaintiff was "still stooling approximately 3 times per day . . ." (R. at 747.) Records dated July 24, 2015, from Fayette County Memorial Hospital Emergency Department, indicate that Plaintiff has diarrhea x "1 yr." (R. at 665.) On August 13, 2015, Dr. Rupert again noted that Plaintiff "does have some loose stools." (R. at 807.) On August 17, 2015, nurse practitioner Joel Rice noted that Plaintiff is "[s]till having daily diarrhea." (R. at 704, 705.) On September 8, 2015, Dr. Allan Peck noted that Plaintiff had diarrhea and stated that Plaintiff "will have Imodium since she has less rectum and that probably is causing some of her issues." (R. at 818.) In September 2015, CNP Rice again noted that Plaintiff had diarrhea. (R. at 699, 702.) On November 16, 2015, Dr. Wilson noted that Plaintiff "continues with frequent stools," that she has diarrhea, and that she "continues with over the counter antidiarrheals." (R. at 737-40.) On December 16, 2015, Plaintiff was noted to have diarrhea. (R. at 685.) On December 28, 2015, oncologist Jeffrey VanDeusen, M.D., treated Plaintiff and noted that she had "diarrhea intermixed with constipation" and intermittent abdominal discomfort and bloating. (R. at 730.) Dr. VanDeusen stated "we will try some linens[5]. . . to see if we can calm her gut and improve her bowels." (R. at 735.) Dr. Kudalkar's

---

[5] It appears that Dr. VanDeusen meant "Linzess," which is a "prescription medication used in adults to treat irritable bowel syndrome with constipation." Linzess, *What is LINZESS*, https://www.linzess.com.

treatment notes from January 13, 2017, list Plaintiff's current prescriptions, which included "Incontinence Supply Disposable (DEPEND ADJUSTABLE UNDERWEAR LG) MISC," and "linaclotide (LINZESS)." (R. at 847-48.) On February 23, 2017, Dr. Kudalkar noted that Plaintiff is feeling "fair" and that she has "continued loose stools every day, ever since her surgery 2 years ago." (R. at 871.) He assessed Plaintiff with diarrhea and again noted that she has persistent loose stools that have been "ongoing for some time." (*Id.*) On March 9, 2017, Dr. Kudalkar stated that Plaintiff "has diarrhea 4-5 episodes / day [and] occasional incontinence which is thought to be related to her colon surgery." (R. at 884.) Further, Plaintiff testified that she has diarrhea consistently, cannot hold her bowls, does not know when diarrhea is going to hit, and that she has had accidents. (R. at 42, 46.) Based on the foregoing, it is evident that the ALJ failed to consider portions of the record and/or mischaracterized the significance of evidence related to Plaintiff's diarrhea in determining that "[t]he record notes little to no complaints related to diarrhea." (R. at 23.) The ALJ's erroneous factual findings in this regard infect his consideration of Plaintiff's functionality such that the undersigned cannot conclude that the RFC is supported by substantial evidence.

The Commissioner's arguments to the contrary are unavailing. First, the fact that Plaintiff complained of constipation on various occasions does not detract from her allegations regarding diarrhea. Indeed, an individual suffering from a bowel disorder often suffers from both constipation and diarrhea. *See Hubbard v. Comm'r of Soc. Sec.*, No. 11-11140, 2012 WL 883612, at *6 (E.D. Mich. Feb. 27, 2012), report and recommendation adopted, No. 11-11140, 2012 WL 858636 (E.D. Mich. Mar. 14, 2012) (explaining that "one suffering from functional bowel disorder, like plaintiff, commonly suffers from both constipation and diarrhea." (citing

University of Michigan Health System, *What Are Functional Bowel Disorders?* http://www.med.umich.edu/fbd/).) Further, Dr. VanDuesen's treatment notes indicate that Plaintiff suffered from "diarrhea intermixed with constipation." (R. at 730.)

Second, the fact that several treatment records state that diarrhea was "not present" does not absolve the ALJ's error. Although an ALJ need not discuss "every piece of evidence submitted by a party" or "make explicit credibility findings as to each bit of conflicting testimony," his factual findings as a whole must "show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citations and internal quotation marks omitted). As set forth above, here, the undersigned cannot conclude that the ALJ considered all of the evidence and resolved any conflicts. Thus, even if the record contains substantial evidence supporting the ALJ's RFC assessment, the undersigned is unable to discern how the errors outlined above may have influenced the ALJ's RFC calculation. The undersigned is therefore convinced that the ALJ's errors in analyzing the record evidence may not have been harmless and that this matter should be remanded for further consideration. *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499-500 (6th Cir. 2014) (errors in the ALJ's characterization of evidence on which non-disability finding is based warrant remand).

Third, the Commissioner's contention that Plaintiff was required to submit a medical source statement imposing restroom breaks is likewise unavailing. The ALJ is ultimately charged with evaluating the medical evidence and determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Given the numerous medical records substantiating Plaintiff's allegations of diarrhea, the ALJ should have at least considered whether Plaintiff would require

16

additional and/or unscheduled bathroom breaks beyond those normally permitted by an employer. *See Sherrill v. Comm'r of Soc. Sec.*, No. 1:13-CV-276, 2014 WL 1338114, at *6–7 (S.D. Ohio Apr. 2, 2014), report and recommendation adopted, No. 1:13CV276, 2014 WL 1672926 (S.D. Ohio Apr. 28, 2014) (recommending reversal and remand "with instructions to the ALJ to determine the frequency and duration of plaintiff's required bathroom breaks and the practical work-day limitations resulting therefrom in formulating plaintiff's RFC," and to "account for all the medical and testimonial evidence regarding plaintiff's urinary incontinence impairments, including the objective findings from plaintiff's urologist, when reformulating plaintiff's RFC"); *see also Hubbard*, 2012 WL 883612, at *7 (finding "that where a social security claimant has an impairment that requires 'ready access to bathroom' and the freedom to use it 'as needed,' an ALJ should 'make a specific finding concerning the frequency and duration of [the claimant's] bathroom usage as part of the RFC.'") (citations omitted). Moreover, here, Dr. Kudalkar submitted a medical source opinion that discussed Plaintiff's ongoing diarrhea, and specifically stated that his opinion was supported, in part, by the fact that Plaintiff "has diarrhea 4-5 episodes / day [and] occasional incontinence which is thought to be related to her colon surgery." (R. at 884.) Thus, although Dr. Kudalkar did not provide specific limitations regarding restroom breaks, he affirmatively stated that Plaintiff was limited by diarrhea and occasional incontinence. *See Hubbard*, 2012 WL 883612, at *7 (remanding for the ALJ to consider whether plaintiff would require unscheduled bathroom breaks and whether those breaks would be work preclusive despite the fact that the treating physician's opinion offered "was quite non-specific about what functional limitations and restrictions plaintiff might have as a result of his diarrhea").

Additionally, the ALJ ignored and/or mischaracterized evidence related to Plaintiff's neuropathy. Plaintiff testified that she has numbness in her hands, which affects her ability to hold onto things. (R. at 47-48.) In discounting Plaintiff's allegations, the ALJ stated that "[t]he record shows that the claimant suffered from only mild neuropathy, which improved with medication (Exhibits 14F5-11, 15F/53, 57-59)." (R. at 23.) This statement lacks record support. Rather, on December 28, 2015, Dr. VanDeusen specifically stated that Plaintiff "continues to suffer from chemotherapy-induced peripheral neuropathy from her oxaliplatin. She has been placed on Lyrica and venlafaxine *without much benefit*." (R. at 730 (emphasis added).) The ALJ also appears to have mischaracterized or ignored evidence when considering Dr. Kudalkar's opinions regarding Plaintiff's neuropathy. For example, Dr. Kudalkar opined that Plaintiff has limitations in fine manipulation and feeling due to her peripheral neuropathy. (R. at 884-86.) The ALJ assessed "little" weight to Dr. Kudalkar's opinion, finding that "there is nothing to support any manipulative restrictions, as the record does not mention any hand issues." (R. at 24.) This statement lacks record support. Indeed, the record contains Plaintiff's testimony regarding neuropathy/numbness in her hands (R. at 47-48), multiple references to neuropathy in her treatment records (*see, e.g.,* R. at 813, 811, 626, 730, 884), and Dr. Kudalkar's opinion that Plaintiff would be limited in fine manipulation due to her neuropathy (R. at 886). Although evidence in the record may support the ALJ's finding that Plaintiff's neuropathy is mild and does not cause any functional limitations, the above errors infect the ALJ's analysis such that the undersigned cannot conclude that the RFC is supported by substantial evidence.

In sum, in weighing the evidence to formulate Plaintiff's RFC, the ALJ failed to consider portions of the record and misunderstood or mischaracterized the significance of other evidence

18

in the record. Remand is therefore appropriate.

## VII. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                 /s/ *Chelsey M. Vascura*
                                                 CHELSEY M. VASCURA
                                                 UNITED STATES MAGISTRATE JUDGE